UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 1:16-cr-10-JAW |
| ANDY QUINN GOODALL | |

DEFENDANT ANDY GOODALL'S SENTENCING MEMORANDUM

NOW COMES Andy Goodall, by and through undersigned counsel, and hereby submits the following Sentencing Memorandum.

SUMMARY

Mr. Goodall suggests that a sentence of 16 years (192 months) followed by 7 years of supervised release with the standard and recommended special conditions is appropriate in this case. Sixteen years of incarceration is "sufficient but not greater than necessary" for Mr. Goodall, based on application of the sentencing factors set out in 18 U.S.C. §3553(a), in particular the nature and circumstances of the offense and the characteristics of the offender. Such a sentence avoids over incarceration and disparity between similarly-situated offenders. This lengthy sentence punishes, provides deterrence, protects society, allows for desired rehabilitation, and is consistent with sentences in similar cases.

GUIDELINE CALCULATIONS

Mr. Goodall has withdrawn his objections to the Revised Presentence Report ("Revised PSR"). Accordingly, his Advisory Sentencing Guideline calculations are as follows:

| | COUNT 1A – VICTIM A | COUNT 1B – VICTIM B |
|---|---|---|
| BASE OFFENSE LEVEL | 32 | 32 |
| MINOR UNDER 12 | +4 | +4 |

1

| DISTRIBUTION | +2 | +2 |
|---|---|---|
| SADISTIC OR MASOCHISTIC DEPICTIONS | +4 | +4 |
| CUSTODY, CARE, OR SUPERVISORY CONTROL | +2 | +2 |
| ADJUSTED OFFENSE LEVEL | 44 | 44 |

| MULTIPLE COUNT ADJUSTMENT | +2 |
|---|---|
| COMBINED ADJUSTED OFFENSE LEVEL | 46 |
| CHAPTER 4 ENHANCEMENT | +5 |
| ACCEPTANCE | -3 |
| TOTAL OFFENSE LEVEL | 43 |

At Criminal History Category II, Mr. Goodall has an advisory sentencing range of life. However, because the maximum term of imprisonment authorized by 18 U.S.C. § 2251(e) is 30 years, Mr. Goodall's advisory guideline range is 360 months.

### CHARACTERISTICS OF OFFENDER

The Revised PSR sets forth an accurate picture of Mr. Goodall's life.

Mr. Goodall is a 29-year-old man who has lived in Maine nearly his entire life. (Revised PSR ¶ 59.) His life has been marked by difficulties, including instances of sexual abuse, and mental health and substance abuse problems for which treatment has been sporadic and difficult.

At a young age, Mr. Goodall was sexually abused, in a rather graphic manner, by his female babysitter. (Id. ¶¶ 60 & 65.) The abuse was reported to the Department of Health and Human Services and Mr. Goodall received counseling thereafter. (Id. ¶ 65.)

Mr. Goodall went on disability between the ages of 10 and 12. (Id. ¶ 66.) He has had a number of mental-health related hospital admissions, beginning at around the time he went on disability, and more recently in 2015. (Id.)

Mr. Goodall did not graduate from high school and he experienced problems from his peers. (Report of Diane A. Tennies, Ph.D., LADC "Tennies Report" at 2.)[1] He obtained his GED at the age of 17 and worked different minimum-wage jobs for short periods. (Id.)

Mr. Goodall has received a number of mental health diagnoses through the years, including bipolar disorder, post-traumatic stress disorder, and Type 2 personality disorder. (Revised PSR ¶ 65; Tennies Report at 2.) He has received prescriptions for at least 8 different medications in an effort to treat his mental health conditions. (Revised PSR ¶¶ 66, 68.) It is clear, however, that through counseling or medication management, Mr. Goodall has yet to receive appropriate interventions for the management of his mental health issues. It is perhaps no coincidence that Mr. Goodall has had long-standing problems with substances. (See id. ¶¶ 69-70.)

While he is incarcerated in the federal system, Mr. Goodall wants to engage in available mental health and sex offender treatment programs. In particular, he wants to participate in one or more of the treatment programs available to sex offenders in federal prison. These intensive programs are for inmates who are committed to permanent behavior change, like Mr. Goodall, and are designed to help them manage their sexual behavior and reduce sexual recidivism.

---

[1] A copy of Dr. Tennies' report is being filed under seal.

Mr. Goodall is "highly amenable" to treatment. (Tennies Report at 4.) He has the verbal abilities necessary for cognitive, evidence-based, treatment. (Id.) More importantly, he is motivated to change the behaviors that led to the underlying offense, is ready and willing to engage in treatment. (Id. at 2, 4-5.) Further, his lengthy relationship with Billiejo Parker and the continued support of his family increase the possibility that his treatment will be successful.

Mr. Goodall presents a low-moderate risk of reoffending, based on his Static-99R score. (Id. at 4.) His cognitive functioning, familial support, openness to treatment, and relationship with Ms. Parker are "factors that are actuarially associated with a reasonable possibility that treatment may be successful," which "likely moderate or lower his risk upon release." (Id. at 5.)

Mr. Goodall recognizes that he is still a young man who would have a long time ahead of him if he is released in sixteen years. Indeed, whenever he is released, permanent behavior changes will enable him to live a healthy, productive, and safe life.

## RESTITUTION

To date, no requests for restitution have been made. (Revised PSR ¶ 85.) Mr. Goodall reserves his right to address any claims for restitution, should any be made after the filing of this memorandum.

## VULNERABILITY IN PRISON

Vulnerability in prison is recognized as a factor the court may consider in crafting an appropriate sentence. Koon v. U.S., 518 U.S. 81 (1996)(police officers convicted of civil rights crimes); U.S. v. Gonzalez, 945 F.2d 525 (2d Cir. 1991) (departure affirmed for defendant who had "softness of features" which would make him prey to prisoners); U.S. v. Lara, 905 F.2d 599 (2d Cir. 1990) (departure from 10 to 5 years upheld for defendant whose youthful appearance

and bisexuality made him particularly vulnerable to victimization, a factor not adequately considered by the Guidelines); U.S. v. Long, 977 F.2d 1264 (8th Cir. 1992) (court departed from 46 months to one year home detention based on potential victimization in prison); U.S. v. Parish, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child pornography case in part because defendant had "high susceptibility to abuse in prison" due to his demeanor, his naiveté, and the nature of the offense); U.S. v. Wilke, 995 F. Supp. 828 (N.D. Ill. 1998) (downward departure based on appearance and conviction of child pornography offense would subject him to physical abuse in prison); U.S. v. Ruff, 998 F. Supp. 1351 (M.D. Ala. 1998)(Ruff would be especially vulnerable to sexual victimization in prison).

A sentence of 16 years is further justified, in part, by the serious risk that Mr. Goodall faces while incarcerated. That risk increases over time, both due to continued exposure, and due to the constant turnover of other inmates bringing new threats into the facility.

### SIMILAR CASES AND REDUCTION IN DISPARITY

"There is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes." United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011). The First Circuit will "generally respect the district court's sentence as long as the court has provided a plausible explanation, and the overall result is defensible." United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008).

Particularly in the area of child pornography offenses, an appropriate sentence may be appropriately harsh, yet still below the advisory range. This is just such a case.

Congress provides a sentencing baseline by requiring a 15-year minimum mandatory sentence. Beyond that, the actual conduct to which Mr. Goodall admitted and pleaded guilty is toward the low end of production; a small number of photographs of the victims. Most critically, there was no physical sexual abuse of or contact with the victims.

Mr. Goodall is CHC II. A sentence of 16 years reflects his criminal record, particularly the fact that none of his prior convictions involve children or sex crimes. Likewise his criminal and person histories are devoid of indication of sex with children.

A review of other sentences handed down in this district demonstrates that Mr. Goodall's conduct in relation to the conduct in those other cases is toward the lower end of the seriousness spectrum.

For example, in <u>U.S. v. King</u>, 741 F.3d 305 (1st Cir. 2014), the defendant produced a number of child pornography video files of his minor stepdaughter masturbating. King made the videos by hiding a small video camera in the stepdaughter's bathroom, which then recorded to an attached computer. Investigators also found four CDs containing child pornography belonging to King. This Court found King did not accept responsibility for his actions because he lied about whether he had made the videos knowingly.

King was also assessed the 5-point pattern of abuse enhancement. The Government offered King a plea agreement whereby he could forgo prosecution under 18 U.S.C. § 2551—thereby avoiding a fifteen-year mandatory minimum sentence—in

exchange for a plea to possession of child pornography. King accepted this offer, and this Court sentenced him to 72 months incarceration.

The First Circuit affirmed King's sentence, calling the crime "particularly repellent." Id. Recognizing the charging difference, it is notable that the 72-month sentence King received falls well below the 120-month statutory maximum he faced. Indeed, it is clear that his conduct, regardless of what he was charged with, was worse than that of Mr. Goodall's.

In U.S. v. Muise, 13-cr-12-NT, the defendant engaged in actual sexual abuse of his own child in front of a web camera via Skype. Others were watching and recording the "live broadcast" abuse. Like Mr. Goodall, Muise faced the 30-year statutory maximum. Judge Torresen imposed a sentence of 25 years. The conduct in Muise, actual physical sexual abuse, which the defendant recorded and broadcast is far more egregious than Mr. Goodall's.

Frederick Butler was convicted of two counts of gross sexual assault on minors in 1995. (U.S. v. Butler, 13-cr-187-NT, D.E. 41.) In 2001, he was convicted of receiving child pornography. Two months after completing supervised release, he again engaged in possessing and distributing child pornography. The Government sought a sentence of 300 months.

The content of the e-mails sent by Butler demonstrated predatory intentions and a continuing desire to engage in sex with young boys. (Id., pp. 4-6.) Butler faced a minimum

mandatory of 15 years and maximum of 40 years. (Id., p. 10.) Judge Torresen sentenced Butler to 20 years. Unlike Butler, Mr. Goodall has no history of sexual misconduct. Unlike Butler, Mr. Goodall has never had treatment.

This Court imposed a sentence of 192 months in U.S. v. Mocarsky, 11-cr-84-JAW. Mocarsky, a kindergarten teacher, had multiple kindergartners "dress up" and he then took pornographic pictures of them during school. (D.E. Nos. 37 & 52.) According to the Prosecution Version, Mocarsky told Minor A to pull up a bikini between her vagina and buttocks, exposing her genital area, which he photographed. Mocarsky had at least 4 other students pose in similar ways.

A dispute arose over whether Mocarsky accepted responsibility for his conduct. (D.E. 52.) The Government asked this Court to impose a sentence within the applicable guideline range. (D.E. 52.)

In U.S. v. Cheese, 13-cr-155-JAW, the defendant established an on-line relationship with the victim. He traveled from England to Bangor, Maine and met the 13-year-old victim at least three times in hotel rooms. On each occasion he had her engage in sex acts and recorded the conduct. (See D.E. 16.) This Court imposed a sentence of 204 months.

Paul Henry was sentenced to 180 months for production of child pornography. U.S. v. Henry, 14-cr-64-JDL. Henry recorded sexual activity with a minor on several occasions. (D.E. 66.) Henry shared video clips of portions of the activity with at least ten

people via social media. The sentence represented the minimum mandatory and a binding plea agreement. (D.E. 67.)

In U.S. v. Hinkley, 13-cr-49-NT, the defendant was sentenced to 300 months after pleading guilty to sexual exploitation of a minor pursuant to 18 U.S.C. § 2251(a). Hinkley admitted to showing two boys pornography on his computer and threatening them physically when they refused to masturbate for him. (D.E. 25.) Hinkley then streamed the images of the boys masturbating on social media.

Christopher Veazie was sentenced to 300 months on a charge of sexual exploitation of a child and 120 months, concurrent, on a charge of possession of child pornography. U.S. v. Veazie, 11-cr-130-GZS. Veazie admitted to sexual contact with a minor, which he photographed, as well as a video of defendant engaging in sexual contact with the minor. (D.E. 26.)

The conduct in which Mr. Goodall engaged is most comparable to that of Mocarsky. Mocarsky was sentenced to 192 months. Mocarsky, however, engaged in his conduct with at least four victims. Mocarsky was the victims' school teacher. Mocarsky also minimized his conduct at sentencing. Paul Henry's victim was older, but he engaged in sexual conduct with her on multiple occasions and shared that on social media. Christopher Veazie had sexual contact with his victim. Derek Hinkley threatened two boys and coerced them into masturbating in front of him, which he recorded and shared. Cheese traveled to Maine from England and engaged in and photographed sex with the

minor on multiple occasions. Butler, who received a 20-year sentence, had two prior convictions for gross sexual assault on minors, and a federal child pornography conviction.

Comparing Mr. Goodall's conduct to other cases in Maine, it is evident that a sentence of 192 months is consistent and appropriate. Mr. Goodall posed his victims. He did not engage in a sexual act or sexual contact. He admits that he also downloaded, exchanged and saved child pornography.

Mr. Goodall acknowledges the wrongfulness of his conduct. He admitted his role in his conduct to investigators early on, before he was charged. Mr. Goodall also gave investigators access to his online accounts and allowed them to assume his online aliases, providing user names and passwords for his various accounts.

Mr. Goodall is remorseful for his conduct. He waived Indictment and spared the victims of his crimes from having to relive the events to the grand jury or during a trial.

Mr. Goodall has no history of other sexual misconduct. He is a victim of graphic sexual abuse at the hands of a babysitter. (Revised PSR ¶¶ 60, 65.) Mr. Goodall has had serious mental health difficulties throughout his life and was exposed to alcohol and drugs at an early age, and has suffered from his own addictions. However, he intends to address his mental health, substance abuse, and sexual behaviors through the programs available to him in federal prison.

If Mr. Goodall engages in these programs during the term of his incarceration—and he has evidenced a high degree of readiness and is receptive to sex offender treatment—the risk that he would reoffend upon release is decreased. Indeed, testing indicates that Mr. Goodall, absent treatment, presents a low-moderate risk to reoffend upon release. (Tennies Report at 4.) Dr. Tennies opines, however, that if Mr. Goodall completes treatment, finds stable housing upon release, is monitored and otherwise complies with the terms of supervised release, he would have a substantially lower risk of reoffending, particularly if he continues to have the support of his family. (Id. at 5.)

## CONCLUSION

Mr. Goodall respectfully requests a sentence of 16 years imprisonment, followed by an extended period of supervised release. For the reasons set forth above, this long sentence meets the goals of sentencing and is sufficient but not greater than necessary, accounting for the facts of this case.

Dated: July 8, 2016                                /s/ Joseph M. Bethony  
                                                   Joseph M. Bethony, Esq.  
                                                   GROSS, MINSKY & MOGUL, P.A.  
                                                   23 Water Street, P.O. Box 917  
                                                   Bangor, Maine  04402-0917  
                                                   Attorneys for Defendant

### CERTIFICATE OF SERVICE

I, Joseph M. Bethony, Esquire, of the firm Gross, Minsky & Mogul, P.A., attorneys for the Defendant, hereby certify that on July 8, 2016, I electronically filed **DEFENDANT ANDY GOODALL'S SENTENCING MEMORANDUM** with the Court via the CM/ECF electronic filing system which will send notification of such filing via said system electronically to the following persons: Andrew McCormack

/s/ Joseph M. Bethony
Joseph M. Bethony, Esq.
GROSS, MINSKY & MOGUL, P.A.
23 Water Street, P.O. Box 917
Bangor, Maine  04402-0917
Attorneys for Defendant