UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:16-CR-00010-JAW |
| ) | |
| ANDY QUINN GOODALL ) | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

NOW COMES the United States of America, by and through its attorneys, Thomas E. Delahanty II, United States Attorney for the District of Maine, and Andrew McCormack, Assistant United States Attorney, and submits this memorandum to assist the Court in its determination of an appropriate sentence. For the reasons set forth below, the government recommends a sentence of 25 years followed by a lifetime of supervised release.

### BACKGROUND

The defendant's guidelines imprisonment range is life. (PSR ¶ 74). The defendant is facing a statutory minimum term of imprisonment of 15 years and a statutory maximum term of imprisonment of 30 years. (PSR ¶¶ 73-74). The Court must impose a term of supervised release of at least five years and has the discretion to order a term of supervised release of life. (PSR ¶ 76). A fine of up to $250,000 may be imposed and a special assessment of $100 per count is mandatory. (PSR ¶¶ 81-82).

After United States v. Booker, 543 U.S. 220 (2005), the First Circuit has encouraged sentencing courts to follow a "specifically delineated roadmap" when sentencing under the advisory sentencing guidelines:

> [A] sentencing court ordinarily should begin by calculating the applicable guideline sentencing range; then determine whether or not any departures are in order; then mull the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations; and, finally, determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate.

United States v. Davila-Gonzalez, 595 F.3d 42, 46 (1st Cir. 2010) (quoting United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006)). The statutory factors to be considered include "the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide deterrence, respect for the law and just punishment, and the need 'to avoid unwarranted sentence disparities.'" United States v. Zapata, 589 F.3d 475, 486 (1st Cir. 2009).

## THE FEDERAL SENTENCING GUIDELINES

The sentencing guidelines represent the only "integration of the multiple factors" identified in section 3553 and bear the imprimatur of the expert agency charged with developing them. United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (emphasis omitted). Adherence to these guidelines avoids unwarranted disparities. *See* United States v. Willingham, 497 F.3d 541, 545 (5th Cir. 2007).

The defendant arrives at his advisory guideline range because of the characteristics of his offense. In order to evaluate a defendant's argument that his treatment under the guidelines is unfairly harsh, a sentencing court must examine how a defendant arrived at a particular sentencing range. *See* United States v. Shrake, 515 F.3d 743, 747 (7th Cir. 2008). Here, the defendant's base offense level is increased because of the application of a number of properly applied enhancements.

2

The advisory guideline sentence in this case is long. That sentence, however, is based on a proper application of the controlling guideline and it reflects the extremely serious nature of the defendant's crime.

## SECTION 3553(a) FACTORS

**1.    The Nature and Seriousness of the Offense**

As detailed in the PSR at ¶¶ 5-13 and in the Government's Version of the Offense, in September of 2015, law enforcement received information that an individual ("User 1" - later identified as the defendant) was posting images of child pornography and child erotica to a foreign website ("Website A"). Law enforcement also received information regarding the Internet Protocol (IP) addresses associated with the User 1 account. The logs revealed two commonly used IP addresses to log into the account. Through a Customs Summons, it was revealed that these IP addresses were associated with two neighboring residence in Bangor, Maine. Based on this information and further investigation, a federal search warrant was obtained on September 21, 2015 and executed on September 22, 2015 at one of these residences in Bangor, Maine ("Search Warrant 1 Residence").

Upon arrival at the Search Warrant 1 Residence, agents met with "L.A." L.A. was unfamiliar with Website A and had never heard the screen/user name of User 1. She stated, however, that she had two children and that an individual by the name of Andy GOODALL and his girlfriend had been babysitting her two sons for the last month. However, L.A. had been fired from her job the day before and no longer needed the service of a babysitter. Therefore, she had the defendant and his girlfriend move out of

Search Warrant 1 Residence and into L.A.'s parents' residence in Kenduskeag, Maine ("Search Warrant 2 Residence.")

L.A. noted that the defendant had used the internet while living with her. In fact, she noted that her internet connection was password protected and the only two people with access to the password were the defendant and his girlfriend.

A law enforcement agent showed L.A. some images that had been posted to Website A by the defendant. L.A. identified a boy in some of the images as her son. L.A. was also able to identify other children who were posted to Website A by the defendant as children of friends of hers. She stated that the defendant would have had access to these children.

On September 22, 2015, law enforcement obtained a second federal search warrant for Search Warrant 2 Residence. This search warrant was executed on September 22, 2015. The defendant was present when the search warrant was executed. The defendant admitted to taking pictures and/or video of naked children and children in their underwear. The defendant admitted to using the screen name User 1 to post these images on Website A. The defendant also claimed ownership of the email address associated with User 1's Website A account.

The defendant further spoke to investigators, providing some detail as to his activities. The defendant admitted that he was sexually interested in 13-18-year-old girls, but was also sexually attracted to adult women. The defendant stated that he believed that by taking photos and videos of young children, he would be able to trade them for other types of child pornography in which he was interested. The defendant acknowledged that his conduct was "wrong," but stated that he could not help himself.

The defendant permitted investigators to assume his online aliases, and provided user names and passwords for various accounts, including email accounts and masking accounts designed to hide a user's identifying information.  A review of these various accounts revealed communication between the defendant and other child pornography enthusiasts.  In these communications the defendant stated that he "prefers little girls, getting fucked and crying."  The contents of the defendant's email trading account contained in excess of 900 images, and approximately 44 videos constituting child pornography.  These images and videos, which were sent to the defendant by others via his membership on Website A, include videos and photographs of child victims being sexually penetrated by adult males.

       The defendant took pornographic images of two prepubescent minors (Minor A and Minor B).  These images were taken in Bangor, Maine.  The defendant posted these images to Website A and provided links to these images in emails he sent to others.

       **2.**      **History and Characteristics of the Defendant**

       The defendant described his childhood as good with the exception of sexual abuse he suffered as a young child at the hands of a female babysitter.  (PSR ¶ 60).  He has prior convictions for Theft and Domestic Violence (PSR ¶¶ 50, 53).  The defendant has a history of mental health issues, has been hospitalized on multiple occasions, and has also attempted suicide multiple times.  (PSR ¶¶65-67).  The defendant has also taken (and currently takes) multiple drugs for his mental health issues.  (PSR ¶ 68).

       The defendant has a history of drug abuse including marijuana, prescription pain medication, heroin, and benzodiazepines.  (PSR ¶ 69-70).  The defendant has a very limited work history and receives disability.  (PSR ¶ 71).

The defendant has pleaded guilty and that suggests that he recognizes, in some measure, the immense harm he has caused.

### 3. Adequate Deterrence to Criminal Conduct

The need to deter individuals from exploiting children and producing child pornography is obvious. For the reasons noted above, these crimes are grave and destructive. An individual who consumes and distributes child pornography creates a market for the abuse of children by providing an economic motive for creating and distributing the materials. *See* United States v. Goff, 501 F.3d at 259-60. A person who produces child pornography feeds that market and directly hurts children.

In support of a sentence of incarceration of sixteen years, the defendant cites several child pornography cases that have been sentenced in Maine in recent years. *Def.'s Sentencing Memorandum* at 5-10. Every child exploitation crime is horrific and unique. Courts make difficult sentencing decisions based on important distinctions like the duration of the conduct, the effect on the victims, and the distribution of the images. *See* United States v. Joubert, 778 F.3d 247, 256 (1st Cir. 2015) (discussing the unique nature of child exploitation crimes). Deterring the production and distribution of child pornography and protecting children victimized by child exploitation are factors that deserve significant weight at sentencing.

The high risk of recidivism for sex offenders is well known. That knowledge has supported sex-offender registration requirements and provides a reasonable basis for the

Sentencing Commission's approach to sentencing enhancements in child exploitation cases. *See* United States v. Garner, 490 F.3d 739, 743 (9th Cir. 2007).[1] The risk here supports a lengthy sentence and justifies a long period of supervised release.

### 4.     Alleged Vulnerability In Prison

The government rejects the argument that the nature of the defendant's offense (production of child pornography) alone should result in a decreased sentence due to concerns about alleged vulnerability in prison. Although discussed in the context of a departure from the sentencing guidelines, the court in United States v. Kapitzke, 130 F.3d 820 (8th Cir. 1997) effectively discusses why a defendant convicted of a child pornography offense should not receive a decreased sentence on that basis alone:

> Susceptibility to abuse in prison justifies departure only in extraordinary circumstances. *See* United States v. Belt, 89 F.3d 710, 714 (10th Cir.1996); *see also* Koon, 518 U.S. at ----, 116 S.Ct. at 2053. Kapitzke's mere membership in a class of offenders that may be targeted by other inmates cannot make his case extraordinary. *See* United States v. Rybicki, 96 F.3d 754, 759 (4th Cir.1996) (district court cannot depart based on extraordinary punishment merely because

---

[1] The assessment of recidivism risks and the difficulty in predicting rates of recidivism from offenders' individual characteristics is discussed by the Seventh Circuit Court of Appeals in United States v. McIlrath, 512 F.3d 421 (7th Cir. 2008). Here, the Static-99 risk assessment was used to determine the defendant's risk of recidivism. (*See* Tennies Report at 4-5). However, even advocates of the Static-99 claim only "moderate predictive accuracy." Id. at 425. "Static 99 treats as a recidivist only someone who is convicted of a further sex offense, but the recidivism concern is with someone who commits a further offense, whether or not he is caught-yet if he is not caught, his subsequent crime does not affect the data on which the Static 99 calibrations are based." Id. at 425. *See also* State v. Hilton, 2008 WL 2477431, *17 (slip copy) (Ohio App. 8 Dist.,2008)(citations omitted)("The [Static-99] evaluation merely performs an actuarial assessment of an offender's chances of reoffending. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot, purport to make a prediction of a particular offender's future conduct.")

police officers as a class suffer disproportionate problems when incarcerated); *see also* Koon, 518 U.S. at ----, 116 S.Ct. at 2053 (district court could depart based on susceptibility to abuse in prison given "extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers"). Otherwise, every child pornographer would be eligible for a departure, thwarting the Guidelines' sentences for that sort of crime. We do not believe pornographers as a class are entitled to more favorable treatment under the Guidelines. *See* Rybicki, 96 F.3d at 759. We doubt that Congress or the Sentencing Commission meant to protect pornographers "as a group from the otherwise universally applicable effects of incarceration on convicted criminals." Id.

U.S. v. Kapitzke, 130 F.3d at 822.

## CONCLUSION

The defendant's sentence should reflect the seriousness of the crime that he committed. Child sex crimes are among the most despicable criminal offenses and the defendant's offense is disturbing. A sentence of 25 years imprisonment followed by a lifetime of supervised release is reasonable and will satisfy the goals of sentencing identified in 18 U.S.C. § 3553.

Dated at Bangor, Maine this 22nd day of July 2016.

                                         THOMAS E. DELAHANTY II
                                         United States Attorney

                                         **/s/ ANDREW MCCORMACK**
                                         ANDREW MCCORMACK
                                         Assistant United States Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 22, 2016, I electronically filed Government's Memorandum in Aid of Sentencing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Joseph Bethony, Esq., at jmbethony@grossminsky.com

       Thomas E. Delahanty II
       United States Attorney

       /s/ Andrew McCormack
       Andrew McCormack
       Assistant United States Attorney
       United States Attorney's Office
       202 Harlow Street, Suite 111
       Bangor, ME 04401
       (207) 945-0373
       andrew.mccormack@usdoj.gov